We'll call the case the United States of America v. Terrence Hardee. Mr. Coyne Good morning, your honors. On behalf of the United States, Mark Coyne, I've reserved three minutes for rebuttal with the court's permission. Your honor, this court That request will be granted. Thank you, your honor. Your honor, time and again, this court has held that a significant error in the calculation of the defendant's guidelines range results in a sentence that is very hard to show would have been the same had the correct guidelines range been applied. And by that I mean looking at cases like Wright and Langford, as we briefed, or Ali, or Fumo, even Zabioski. When there is an error in calculating at stage one the applicable guidelines range, where is the case where that error can be found or held to have not contributed to the ultimate sentence. And here, we're not talking about one or two point difference at stage one. We're talking about a very, very significant swing. There's no dispute in this case, your honors, that Mr. Hardee is a career offender. And the fundamental problem with the sentencing, when it actually occurred, which was in January of 2015, is that the district court The final sentence didn't reflect the career offender. It didn't reflect that he was a career offender. It never reflected that he was a career offender. It should have been, the court should have started and should have set on the record that the starting point was the 37 and the 6, which would result in a guidelines range of 368. Neither did it in Dennis. Dennis, the co-defendant, a co-defendant, was a career offender. And there was a substantial variance from what, 360 to life, down to the mandatory minimum. And the government didn't appeal that. Why not? That's correct, your honor. A couple of reasons. First, in building into that, at A103 of the appendix, you'll see that the judge there, a giant of the bench, may he rest in peace, that Judge Arenas, at the end of stage 2 of Mr. Dennis' sentencing proceeding, how calculated, first at stage 1, that it was 360 to life, then exercising departure authority, both for overstated criminal history, which is the same thing that happened here, and also because of the judge's view that some kind of due process violation had occurred because of the way the sting was structured, had gotten down to a stage 2 post-departure guidelines range of 235 to 293 months imprisonment. Only then did the judge exercise the variance power, and then from there went down to ultimately 10 years on the drug trafficking count, and then the 5 years consecutive on the 924C. We didn't appeal that because, at the end of the day, we disagreed respectfully with a lot of the judge's reasons in articulating that sentence. But at the end of the day, the sentence that was imposed was 15 years. But no, Dennis appealed. Dennis did appeal. Is that appeal still pending? That appeal is still pending. It was argued, I'm losing track of months now, but I believe it was argued in December of last month, if not November of last month, and the focus on that appeal was entrapment in the jury instructions, outrageous government conduct, which played a role in what Judge Arenas did here, and then an 8th Amendment challenge to the sentence. I think it would certainly play a role in what he did here when he found that this particular case as to this defendant, which is all we have before us, was more of a practical joke than a real case. But the prosecutor in this case went in after Judge Arenas somehow got down from 360 to life to, I guess it was 110 to 100, whatever it was, and then he down and deported again. But the prosecutor said, you should, we have to avoid an unwarranted disparity between Dennis and Hardy. So that's when he went down and deported again. He went down to another level and ended up sentencing him to 92 months. Your Honor, I think... It went below the mandatory minimum. Your Honor, I do believe the judge said he was, in his view, he was addressing what he perceived might be an unwarranted sentencing disparity, but to be clear... That's what the government said in the sentencing brief. In its sentencing brief, the government said to avoid an unwarranted sentencing disparity with Mr. Dennis, the defendant... With Mr. Dennis, that's what I'm talking about. The government asked for... Got the mandatory minimum on the two counsels that they were both convicted. Correct. And the government asked for that reason, that the sentence be 15 years for Mr. Hardy as well. That that, in the government's view... But he wasn't convicted of that expedited gun charge. He wasn't convicted of that. I can offer, actually, in the supplemental appendix that the government submitted in the Dennis appeal, page 13 of that supplemental appendix, I think a significant reason why there was no conviction for Mr. Hardy was that Judge Arenas, after initially saying he would give an 18 and betting charge, pulled that charge out right before submission. Okay, but he wasn't convicted of it. We couldn't be. I mean, there was no basis. The jury was given no instruction that would permit a conviction. Okay, you know, a couple questions. You want us to look at only the second sentencing hearing. It's not... I think this court, this court looks at everything. I agree with that. But I think the thing that matters the most is what the judge actually said he was doing, the reasons he was offering when he finally did impose sentence. And that, in court, I think that is the one that trumps what happened before, because the judge at the second hearing... I agree with that. But we have to look at the entire record, and the entire record includes two, quote, sentencing hearings here. And three, if you count the co-defendant, Mr. Dennis. Yeah, but at least two involving Hardy. It certainly does. Okay. And it's always interesting to read these transcripts from district to district, from judge to judge. And, I mean, it was, you know, a little bit of a love fest here at certain parts of the transcript. But you talk about the career offender question. And in A231, the appendix, the assistant U.S. attorney says, in terms of the career offender status, I accept the court's findings, but obviously feel the need out of due diligence to bring the court's attention to the fact that it was a career offender, not due to simply two predicate offenses, but three predicate offenses. Is that, on the career offender question, is that waiver? I don't think it is, Your Honor, at that stage. What did she mean? The judge, I believe, and as we explained in our brief, the prosecutor at that point is no longer, is saying, I'm no longer going to dispute what you just ruled against me. But before then, the prosecutor, on no less than four occasions, had made, not only invoked the career offender guideline itself, but also the range associated with that career offender guideline. Did it in the sentencing brief, did it at the first day of the sentencing hearing? And mind you, Judge Arenas, on the first day of the sentencing hearing, did acknowledge the career offender guideline and did acknowledge its consequences. And that's why I said the first day is important. It is, but the problem is that the second day, the judge goes, essentially, as if the career offender guideline didn't exist, because the judge goes to a 24 for the drug count, 21 for the Hobbs Act conspiracy count, by virtue of the grouping rules, gets to a 26 and nowhere. When the prosecutor inquires about the application of the career offender. And however he got there, does it really make a difference, the career offender question, on this record, when you have a mandatory minimum, where he, under this case, he couldn't have gone under 120 months? I agree that he could not have gone under 120 months. And the prosecutor said, to avoid unwarranted disparity, he should be sentenced as Dennis had been. Right. So, as a practical matter, Judge Fish's question is a really good one. As a practical matter, does the career offender matter here? And isn't the real issue, which, of course, you can't raise because you preserve your objection to it, whether the mandatory minimum law should have been imposed? Well, I certainly agree that the mandatory minimum, going below the mandatory minimum is sort of a lurking issue, is a lurking issue. Which is not to raise. Through your brief, you just can't technically raise. Well, we believe it shows that the error here wasn't harmless because we believe the lowest legally permissible sentence was 10 years. But I'm not asking the court to give me a resentencing because of that error. We think it's error, but that's not why we're here. We're here because, as this court has said time and again, process matters. This court, and again, to talk about Wright, to talk about Langford, and I'll quote from Langford, we submit that the improper calculation of the guidelines range can rarely be shown not to affect the sentence imposed. That's 516 F3rd at 215. Going on, we cannot presume that the district court would have imposed the same sentence given the opportunity to consider the correctly calculated guideline. That's at 516 F3rd 217. That's from this court's precedent. I'm not making it up. I'm quoting from the court's precedent. And that is a rule that applies when the defendant is appealing a guidelines miscalculation error. Let me ask you a question. Your friend, well, actually, Judge Irenas talked about sentencing entrapment and sentencing factor manipulation. If we agree with you, do we have to deal with that in an opinion? I don't think you need to, and nor do I think you should. And the reason why I think on the should is that Judge Irenas even wasn't given the benefit of comprehensive briefing, and I apologize on behalf of my office for us dropping the ball on that. We should have on that. We didn't. It's not even the benefit of comprehensive briefing now. I mean, we touch on it in our reply brief in explaining why it's not harmless, but in all, in Well, I'm not so sure you had noticed that he was, well, maybe you did. Maybe you had some notice that he was going to go there. I mean, I think In Dennis' case, there was a lot of notice, and there's a lot in Dennis' case that found its way into this case. I think it's entirely fair to say that Judge Irenas was looking at everything. These are co-defendants convicted after the same trial and was applying the same He hated this case. He hated this crime. I think he, at trial, I don't think he hated the case. He even refused to give an entrapment charge. I believe between trial and sentencing, he began to reevaluate his view as to whether sting operations of the sort should be permitted. Now, that's an issue in the Dennis merits appeal, Mr. Dennis' appeal and his conviction, and a panel of this court, I hope, will be deciding that in an opinion one way or the other. But if the panel, this court has never struck down a sting operation as violating the due process court, has never done it, at least not in the last 40 years, let me put it that way. Say if you were to get a resentencing, if there were to be a resentencing, you will oppose any sentence lower than the 10-year mandatory minimum. We will oppose that, Your Honor, because we believe that is the lowest sentence a court could legally impose. Would you agree, given Dennis' sentence, that 10 years would be an appropriate sentence here? If the court were to impose a 10-year sentence, I doubt we would be appealing for the same reasons that we did not appeal in Mr. Dennis' sentence. At the end of the day, and I see my time is about to expire if I may answer Judge Barry's question, and Judge Barry, as I'm sure you remember from when you occupied my position far better than I ever did. You weren't allowed to go past the red light? Is that what you left on the end of the desk? No. But the decision I didn't want to go beyond the red light, but I'm standing there. I'm sorry I'm beyond the red light, Barley, but Judge Chigars has addressed this most recently in the Irwin appeal, but we are selective in our appealing, and when to appeal and what to appeal are decisions that are committed at the highest levels of the Department of Justice. We try to be very selective. It's sort of in that general area. This question of the 10-year mandatory minimum, as to looking at this from a procedural reasonableness standpoint, which is what we are looking at, isn't the mere fact that the court ignored that a basis for reversal? Regardless of what position you've taken in this case? Regardless of what position. So I want to be clear. I am not authorizing, I'm not asking this court to reverse and remand on that basis. I didn't ask you that question. I believe, now stepping back, so assuming a law clerk model, if I could be so bold, I would say that that is a basis to reverse and remand for resentencing, but we are not, and I want to be crystal clear again. Under procedural reasonableness. Procedural reasonableness, because you have to consider the statutory arraignments. Now the judge offered his reasons why, and again, out of respect for Judge Irenas, a towering figure, if ever there was one in the District of New Jersey, he didn't have the benefit of comprehensive briefing, nor has really this court yet. And so I would ask that you hold off on that kind of decision, and let whichever district judge has this case on remand, let that judge decide that question afresh with the benefit of comprehensive. Okay, I understand. Okay, we'll have you back on rebuttal. Thank you, Your Honor. Mr. Rubenstein? Yes. Good morning, Your Honors. I would make a special request. I have a lot of trouble with my back, and if I could sit here, it would make life easier. Will the recording... If you keep your voice up as well as you just did, that request will be granted. Thank you. Thank you, Your Honor. I will keep my voice up. There are many different issues here that I recognize, and one that I want to touch with at a gait, though, is the sensing disparity, because I don't think it's put forth fairly before the court. We've heard about a 15-year sentence for Mr. Dennis, and an eight-and-a-half-year sentence for my client. Now, the one thing we have to understand, though, is that on Mr. Dennis's case, he got the extra five years above the 10 because of the gun charge for which he was convicted and for which my client was not convicted. So, basically, what the government is asking is that the defendant be put in the exact same position as Mr. Dennis, where they would each get 10 years for the relevant offense, where my client was so much less responsible for what occurred. I don't think I need to get into that. Well, Judge Irenas denied your client's motion for a role in the offense, for a two-level departure on role in the offense. Well, that's true based on the record, but I also made an argument. I think the judge considered that the role in the offense was far less than Dennis's role. My client might not have been a minor participant because of law, but that doesn't mean he was equally a participant as Dennis was. It was Dennis's act from day one. He met with the government four different times before my client was even involved. Dennis was the one who organized the bringing of the weapons to the scene. And let Judge Irenas rest in peace. I certainly don't want to say that I can get into his mind, but after having heard everything, I think there was a disparity between the two defendants, and I think he considered that. I think the record reflects that. So the sentencing disparity is what I think favors my client. My client, on the basis of equity, if not law, and I'll get to that, deserved a lesser sentence than Mr. Dennis, and he deserved a lesser sentence than the 10 years that Mr. Dennis got on the Hobbs Act offense. But Judge Irenas went below the mandatory minimum. Well, and that leads us to the legal question involved. Did Dennis have 17 criminal history points? I don't know how many points he had. The government represented that he had less, and I accept that. Okay, so that's a basis for disparity right there. Well, it might be a basis for some disparity, Your Honor. But at the same time, if we look at this offense, I don't think anybody can claim that my client's role was anywhere near Dennis's role. That's my point, I understand Your Honor's point. I understand. Okay. With regard to the legal issue that faces me, it also faced Judge Irenas, and I don't think I have to say it, but Judge Irenas is far, much far brighter than I am, and he figured it out, so I'm going to basically ride what he said. And basically what Judge Irenas said was that the 10-year minimum mandatory did not apply because the weight of the drugs involved was reformed. He reformed it. He dropped it to 500. Yes, he did. But the jury found differently. The jury found differently, Your Honor. How can you ignore the verdict of the jury? I don't think Judge Irenas ignored the verdict of the jury. I think he went further. Does he have discretion to ignore it? I mean, does he have that kind of discretion? Well, you see, this is what happened, and this is confusing, and this I think involves the issue of waiver. What happened here was late in the day, defense counsel, myself, made a motion regarding the sentencing entrapment issue. Now, the government could have opposed it being late in the day. It did not. The government could have raised it on appeal. Is this the first hearing or the second? This is before the first hearing, I believe. Right. Right. So what I'm saying, though, is that the government has had a chance to challenge that, but it chose not to. It didn't really challenge it. It certainly did not challenge it on this appeal. I'm looking at the statement of issue that the government wrote up for this case, and I'd like to read it only because I think it governs everything else regarding And the issue was, did the district court commit reversible error by not applying the career offender guideline in calculating Hardee's advisory sentencing range before imposing the final sentence, even though he was a career offender? Well, you don't dispute he was a career offender. No, I mean, even Judge Aranis thought he was a career offender. Well, you haven't disputed that. No. But what is in dispute is how we got from the 10-year minimum mandatory to the five-year minimum mandatory. And Judge Aranis arrived at that conclusion because he did consider the sentencing entrapment argument. I think that the issue here, with respect, is whether how he got from 360 to life to 92 months. And he did it by, let's just say, a series of decisions all the way down. And a series of decisions, Your Honor, which the government, in my opinion, for whatever reason, has not appealed. The government's appeal has been made on a very narrow issue. Even at that first sentencing hearing, and I do look at it as a whole, the matter might have been concluded that day, but for the government's desire to brief the issues. Time goes by. The government did not brief the issues. And as I think I'm almost positive I put it in my brief, I actually called the government and said, are you going to brief the issue? And they still didn't brief the issue. And they came back to the second-year thing, we didn't brief the issue. Now, I think that somebody might agree with Judge Aranis' legal analysis, somebody might not agree with Judge Aranis' legal analysis, but I don't know how we get past waiver on all these issues that the government wishes to argue when it did not appeal those issues. Judge Aranis wrote the sentencing entrapment issue, and that's what he had, and that's how the numbers started to come down, and then of course at the end he made a waiver. But he got a waiver through plain error. Well, but again, unless I missed it, and maybe I did, I don't think the government has made a plain error argument. I don't think it's for this court to make that argument for them. They're represented by a tremendous attorney, and they haven't made a plain error argument. And whether it's a plain error or not, I'm not sure, but I'm pretty sure that it's not for the court. So unless the court were to consider it sui sponte, I don't think the court has an interest in it. Well, that's one issue, but you're potentially vulnerable here, aren't you? I mean, the appeal, I hate to keep bringing the Dennis case up, but it's before a panel of this court, and Mr. Coy has told us the issue you're talking about, the entrapment issue, is specifically before this court. And in addition, or aside from the Dennis case, the government has made some strong points here of how Judge Arenas got from 360 to life down to where he was able to totally avoid, in his view, career offender status and the mandatory minimum. So where the government said, as it said a moment ago, and indeed said openly in its brief, he should get, won't oppose any sentence that's lower, that is 10 years or above, and I think I pushed a little bit on that. I mean, you could maybe get a 10-year sentence and not have to worry about Dennis and a few other little things, but that's not my business. What are we talking? We're not talking about 360 to life, I don't think, any longer. Your Honor raises a lot of good points, and if this was a trial courtroom and if my client was sitting next to me, maybe at that point I'd turn to him and say, take the 10 years and go home. But, you know, we're not at that point where the legal argument stage and Mr. Arte is in jail, he's not here, and I don't have that authority. No, of course not. It's none of my business either. It's just to tell me my thing. I think everything is the court's business, Your Honor. But what I would say is the court has to consider, I'm sure it knows this, did Judge Arenas make a legal error in going to 500 grams because of sentencing and traffic? Okay, let's stay right at that point. 500 grams, which gets you to the 5-year mandatory minimum as opposed to the 10. How did he get there? How did he get to the 5-year mandatory minimum? Now, how did he get to the 500 grams? What procedural step got him to the 500 grams? You know, I haven't set the stage. You've got a jury verdict that found over 5 kilos, okay? How did he get the 500 grams? I rely on the trial record as a whole as amplified by Judge Arenas at both sentencing hearings, and my answer to Your Honor is he got there because, in his opinion, the 5 kilograms or the 15 kilograms that was originally charged way over-represented what the government had to have done to have made this thing. In other words, he believed that if they had offered my client, who was one of those down-to-luck guys who might have done something for 10 bucks, and he believed that if they had come forward with a much lower amount, he still would have done the same thing. Okay, was he at Step 1 when he did that, or was he at Step 2? I'm not sure that the record even clearly reflects that. And isn't that the problem we face here? Your Honor, he respects Judge Arenas, a great jurist. And do you and your client? I mean, isn't that the problem we're faced with here? Well, I think that it's certainly part of the problem, but then I'd hearken back to the waiver issue, Your Honor. They have filed an appeal. They have filed an appeal from the sentence. I mean, you're here saying that the sentence is procedurally unreasonable, and we've said in Gunter and subsequently, you know, you need to go through, explain at Step 1 what the guidelines are, explain at Step 2 how you implemented the departures, and Step 3, explain your variances. I mean, it seems to me that this record leaves us with one conclusion. It's procedurally unreasonable. Well, it could have been a better record, but I'd like to, I don't know how much time I have left, but I'd like to take 30 seconds on a harmless error. You're still on the yellow light. Okay. Harmless error, Your Honor, no matter what happened here, no matter what happened here, when you look at this record as a whole, I think it's reasonable to believe, and especially if His Honors are still with us, that if this matter were remanded to a court with Judge Arenas sitting in it, that my client would have received the same sentence, because that's everything that Judge Arenas drove this case to, whether it was proper, whether it was misguided, but he believed that this defendant should receive this sentence, and there's nothing in the record to make us believe that he would have decided differently, and while nobody can do anything about it. So you're saying he really sentenced under old law? Well, I think he sentenced under the law as he saw it. Don't take Eric away now. I think he sentenced under the law as he saw it, but the one thing that jumps out at me, sentencing is about law, but it's also about equity at times, and the equity here is that we think about this, this matter could not be remanded to Judge Arenas, and now it's going to go to another judge who didn't hear Dennis, who didn't hear Hardy, and who could theoretically sentence my client to 30 years. Well, Dennis testified, Hardy didn't, so even Judge Arenas didn't hear Hardy. Well, he didn't hear Hardy, but he heard all the evidence, and he wasn't maybe totally impressed by the evidence, but the point is Judge Arenas, who was around forever, who everybody respects to the end of the earth, felt a certain way, and it goes back to a different judge who feels a different way, and who abides by the law, maybe not by the equities, that again, where would it be equitable to have this man serving 30 years because a different judge who didn't hear the case felt differently? And that to me is a big concern. And all that I can conclude with, because I would rest on my brief, I think I detailed the issues there pretty well, as best as I could. Whether it's well or not, I don't know, but it's as best as I could. And all that I would say is I rest on what Judge Arenas did, but I also call the court's attention to the issue of harmless error and to the issue of waiver. Defense counsel, where defense counsel is usually the appellant, is always faced, always faced with waiver. So maybe it's a bit ironic, it makes me feel a little better to see my very worthy adversary faced with waiver. But I think that waiver is an issue here, and I think it started back at the end of the first hearing when the government did not bring the 10 years to the court's attention and did not brief the issues, and our courts have repeatedly said, object. And the government, since Rule 51, and I've looked at Rule 51, every lawyer when they leave law school, I think, knows one thing. When they don't like something, you say, object. And where Rule 51 says, bring it to us some other way, there's a case that I look at. Well, they did bring it to us, and they did bring it to the court's attention. Well, they made argument. They did make argument. They did make argument of their position on sentencing. But you make argument in every case. What they didn't do, what some cases did, I got a red light, was they did not file a written motion bringing it to the judge's attention so he could rule on it. I believe they waived all their issues except the narrow issue that they raised. How do you like being an appellee? It's different, Your Honor. It's the same, you just try your best. Is the question of ignoring the mandatory minimum, is that before us regardless of whether the government waived it? I respectfully say that it's not before the court as troubling as that might be. We would have the authority, though, if we chose to address it and decide it. I'm a mere lawyer, Your Honor. I don't think I can tell the Third Circuit Court of Appeals what authority it has. All I can do is urge the Third Circuit to say the issue wasn't raised and we're not going to go there. I think the court can do that as well. Okay. All right. Mr. Coyne? Yes, Your Honor. If I may respond just briefly to Mr. Rudenstine's comments on harmlessness. The problem for Mr. Rudenstine is that it takes more than speculation, and all we have right here is speculation that Judge Arenas would have imposed the same sentence if he had started from the 37 and a Category 6. I defy looking at this record to say that this court can be left with the confidence. I think in an opinion on which Judge Beyer was on the panel, Brown, which I believe was said in her brief, the court needs to be left with confidence that the sentence would have been the same. The other problem here from a harmlessness perspective is the reasons that the judge offered. Let's assume it was a departure at Stage 2 that the judge was doing to take into account sentencing entrapment or sentencing factor manipulation. That gets you from a 37 to a 34 under the career offender guideline, because whether or not Mr. Hardy was the victim of sentencing entrapment or sentencing factor manipulation, and we dispute that he was, and my colleague below disputed that, in fact, he was, he's still a career offender, and the judge never explained, no reason that the judge offered really explained why he could get that low. That's at Step 1. That's at Step 1 and at Step 2. But it's at Step 1. I mean, if the error occurred at Step 1, it's an error, and it's procedurally unreasonable regardless of what happened at Step 2. It is. I mean, in rare cases, a Step 1 error can be found harmless, but in none of the cases that I've seen, even Zabialski has this court said that an error of this magnitude that affects the base offense level, here at 37, but the judge goes to a 26, can be found harmless. It affects to the contrary. Doesn't the record make it pretty clear that Judge Arenas knew what he wanted to sentence Mr. Hardy to, and he did? The record is clear that the judge had in mind where he wanted to go. He started through on Day 2 to say, let me show you what I'm going to do here. I'm going to go, he went through the pre-sentence report, almost number by number, let me show you what I'm going to do. He made some adjustments. Some of them were in error. But he was explaining what he was going to do. It was 92 months, and your colleague sort of gave up in a couple of spots. The problem, though, is he has to do more than just simply say what he wants to do. He has to offer good and sufficient reasons for doing that. But under harmless error, perhaps we can read this to say, no matter what he would have done, he would have gotten a 92. But this Court has never held that harmless error review works that way. When you look at Zabielski, and you look at the entire record, and you look for very clear indications that the error, that the guidelines misapplication error,  My problem is the more you look at this record, the more you become convinced that this is what he was going to do. I see my time has expired, so if I can answer that. You don't want to answer that question. Well, I think under this Court, you would have to make new precedent to find this error harmless. I concur with that. And if you do, I would ask that that opinion be written in a way that the government could benefit from it as well. It's very, very narrow, right? Thank you, Your Honor, for your time. Thank you. Thank you. We thank both counsel for an excellent argument. We understand your position in this case, and take the matter under advisement.